## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ERIC CLARK,                              *

Plaintiff,                              *

v.                                      *       Civil Action No. RWT-13-3581

WARDEN, *et al.*,                       *

Defendants.                             *
                                              ***

## MEMORANDUM OPINION

Pending is Defendants' Response to Show Cause, construed as a Motion for Summary Judgment. ECF No. 8. Plaintiff was advised that the Response would be construed as a Motion for Summary Judgment and of his right to file an Opposition in response. ECF No. 9. He has filed nothing further in this case. For the reasons that follow, Plaintiff's request for injunctive relief shall be denied and judgment shall be entered in favor of Defendants.

### Background

Plaintiff, an inmate confined at North Branch Correctional Institution (NBCI), alleges he has had many threats on his life and, despite making NBCI administration aware of those threats, nothing has been done to protect him. He claims he has received several threatening letters which he provided to NBCI officials, and expresses his concern that there is a pattern of falsifying documents and forcing known enemies into the same cell. He asserts that this misconduct explains why there is a pattern of deaths and vicious assaults at NBCI, and is used as a method of retaliation by correctional officers for assaults committed against them. He alleges that "prisoners like myself" are forced into a cell with known enemies, and anyone who protests such an assignment is "brutally beaten up by NBCI officers." He further claims that he is being

placed in danger by forcing him into a double cell because there is a price on his life.  ECF No. 1 at 1 - 2.

Plaintiff submits several documents to support his claim.  In a Request for Administrative Review (ARP), Plaintiff states he is registering a complaint against Warden Shearin because he made it known upon his arrival at NBCI that a price had been placed on his head.  He claims that because his fears were ignored, he became so stressed out and paranoid that he was overwhelmed with depression and contemplated suicide.  He further alleged that he continued to receive infractions for refusing housing and when his segregation time has expired he will have no choice but to go into general population because the segregation time he serves interferes with his progress. The administrative response section of the ARP indicates Plaintiff's request was forwarded to case management and intelligence.  ECF No. 1-1 at 1, 3.

In an undated letter which is not addressed to anyone in particular, Plaintiff states that his "last double cell experience at ECI (Eastern Correctional Institution) almost cost [him] his life, because it was a messed up hit."  ECF No. 1-2 at 1.  He further claims that knowing this has triggered his depression and has made him both nervous and paranoid.  *Id.*  He states he contemplates suicide frequently and that he spent some time at Patuxent where he received medication to treat his depression and anxiety.  Plaintiff claimed in the letter that when he takes his medication his "mind seems a little more clear" and he does not contemplate suicide as much, but taking that medication while housed with someone else makes him an easy target while he sleeps.  He requested placement in a special housing unit for treatment (Special Needs Unit or SNU).  *Id.* at 2.  A response, written in different handwriting and signed by a lieutenant, states that Plaintiff's request for placement in the SNU was discussed with the Psychology Department

and that he did not meet the criteria for the program.  Plaintiff was further advised, "you need to get out into general population, find someone to cell with and make the best of it."  *Id.*

Plaintiff also attaches three notes he claims he received from other inmates which he construes as threats against his life.  The first of these notes, which is unsigned and unattributed to anyone in particular, states that Plaintiff "will be dealt with" if he says anything bad about the writer.  ECF No. 1-5.  The second note is also unsigned but mentions others by what appear to be nicknames or gang names.  It states that the writer has "no real issue with you per se but I won't sleep on you nor no man especially once I'm aware of any form of hostility in the air against me or my comrades."  ECF No. 1-6.  The writer expresses appreciation for Plaintiff's assistance.  *Id.* The third note mentions something about Plaintiff being attacked, but the remainder of the note, the majority of which is indecipherable as to meaning, appears to state that there is no longer an issue between Plaintiff and the sender of the note.  ECF No. 1-8.

## Standard of Review

Summary Judgment is governed by Federal Rule of Civil Procedure 56(a), which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

"A preliminary injunction is an extraordinary and drastic remedy."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal quotation marks and citation omitted).  To obtain a preliminary injunction, a movant must demonstrate:  "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008)).  "[T]o survive summary judgment, [Plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment,

knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

Defendants assert that Plaintiff's claims that his life is in danger have been investigated and are unfounded.  Lieutenant Jason Harbaugh, the Intelligence Officer at NBCI, reviewed intelligence files to determine if there was any indication that Plaintiff's life was in jeopardy.  He discovered that Plaintiff's allegations were investigated several years ago by Harbaugh's predecessor, Lt. Thomas.  Thomas's investigation determined that there was no information to substantiate any threat to Plaintiff by any gang or any individual inmate.  Additionally, Plaintiff had no known enemies at NBCI and had never disclosed to staff which specific group or person had threatened him or why any such threat would have been made.  ECF No. 8 at Ex. A.

Harbaugh is also familiar with Plaintiff in his former capacity as the manager of Plaintiff's housing unit at NBCI.  He states he recalls speaking with Plaintiff about his fears and that Plaintiff was unable to pinpoint any group or individual who had threatened him, nor was he able to articulate a reason why someone would wish him harm.  Further, Harbaugh never received any information from staff or other inmates suggesting that Plaintiff was an intended target for physical harm.  Based upon this information, Harbaugh concludes that Plaintiff's claims are an attempt to manipulate staff into providing him with single-cell housing, a coveted housing assignment.  *Id.*

Defendants further state that Plaintiff's motive for making claims that his life is in jeopardy is evident in a psychiatric note made on November 13, 2013, documenting Plaintiff's statement that he had decided to go on a hunger strike as a way to avoid double celling.

ECF No. 8, Ex. B at 12.  In support of this assertion, Defendants point out that Plaintiff freely admits his paranoia in the Complaint filed with this Court as well as in letters and written statements filed with prison officials.

Plaintiff does not dispute Defendants' position that there is no real danger to his life and that his fears are the product of his paranoia.  Also undisputed is Defendants' assertion that Plaintiff's claims have been investigated and were revealed to be unfounded.  The duty to protect inmates from a known risk of harm presented by other inmates does not encompass endorsement of fears unfounded by objective evidence.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997).  In light of the undisputed evidence, Defendants are entitled to judgment in their favor.  A separate Order follows.


May 14, 2014                                            /s/
Date                                               ROGER W. TITUS
                                       UNITED STATES DISTRICT JUDGE